**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In Re: Air Crash at Toronto Pearson International Airport on February 17, 2025

MDL No. 25-3155 (JWB/JFD)

This Document Relates to:
Vanessa Miles
Alita Parker

**ORDER DENYING MOTION TO DISMISS AND SETTING EXPEDITED DISCOVERY SCHEDULE**

Madeline M. Sinkovich, Esq., Mike Morse Law Firm, PLLC, counsel for Plaintiffs Vanessa Miles and Alita Parker.

Amanda Elisabeth Becker, Esq., Evan Kwarta, Esq., Mark T. Berhow, Esq., Michael G. McQuillen, Esq., Paula Wegman, Esq., and Robert Braun, Esq., Hinshaw & Culbertson LLP, lead counsel for Defendants.

Based on the files, records, and proceedings in this case, and for the reasons stated at the August 20, 2026 hearing, **IT IS HEREBY ORDERED** that Defendants Delta Airlines, Inc. and Endeavor Air, Inc.'s Motion to Dismiss (Doc. No. 70) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** as follows:

1. **Expedited Discovery.** The parties shall conduct expedited discovery, to be completed by October 2, 2026, relating to the issue of passenger status under Article 17.

A. By no later than September 10, 2026, Defendants must produce:

i. The complete provisions of the Flight Attendant Manual in effect on February 17, 2025, concerning deadheading, duty status, uniform requirements, passenger processing, check-in, boarding, seating, rest or sleeping, emergency responsibilities, and conversion of a deadheading flight attendant to working status, together with the revision history necessary to establish

which provisions actually governed on the date of the accident.

ii. The complete provisions of the collective bargaining agreement and any side letters, policies, or implementing materials addressing deadheading, alternate deadheads, releases, rerouting, trip changes, self-positioning, declining or changing a scheduled deadhead, and transportation by means other than the assigned flight.

iii. CrewTrac, Crew Services, scheduling, pairing, assignment, and material communication records concerning Miles and Parker for the relevant pairing, including records bearing on whether either Plaintiff was required to travel on Flight 4819 specifically, as opposed to being required to reach Toronto by a particular time, and whether another flight or means of transportation could have satisfied her employment obligation.

iv. The travel-authorization or employee-listing records, PNR or equivalent records if any, boarding and gate records, seat-assignment records, and passenger, crew, or load manifests showing how Miles and Parker were authorized, boarded, seated, and recorded aboard Flight 4819. Identities of individuals other than Miles and Parker may be redacted.

v. Records showing Flight 4819's required and actual operating crew complement and whether Miles or Parker was counted as operating crew, assigned a working position, briefed as operating crew, or assigned duties for that flight before departure.

vi. The policies and practices governing when Crew Services could convert a deadheading flight attendant to working status, together with any record showing whether that authority was invoked as to either Plaintiff on Flight 4819.

vii. Records sufficient to establish the Toronto hotel and rest period, the Plaintiffs' report times, and the flight or work assignment each Plaintiff was scheduled to perform after arriving in Toronto.

B. By September 3, 2026, Plaintiffs must serve a sworn declaration from each Plaintiff addressing how she came to be assigned to Flight 4819;

whether she understood that she was required to take that particular flight or instead required to arrive in Toronto by a particular time; whether another flight or another means of transportation was permissible; whether she requested, discussed, was offered, or knew of any alternative; what she understood the consequences would have been for not taking Flight 4819; and what duties, if any, she understood herself to have aboard that flight.

Defendants may depose Miles and Parker on these subjects.

C. Plaintiffs may take one Rule 30(b)(6) deposition of Endeavor, confined to the passenger status issue. That deposition may include Endeavor's actual practices—not simply its written policies—concerning whether a mid-pairing deadhead could be altered, substituted, rerouted, released, or satisfied by another means of transportation.

If Plaintiffs believe a separate Delta deposition is needed to resolve an issue concerning travel authorization, the undertaking of carriage, or the relationship between Delta and Endeavor as it bears on passenger status, counsel shall first meet and confer and, if necessary, promptly present that narrow dispute to Magistrate Judge Docherty.

D. Any dispute concerning this limited discovery is referred to Judge Docherty and should be presented promptly after it arises. Any request to modify or extend the deadlines imposed in this Order is also referred to Judge Docherty, and the request must be based on good cause.

2. **Supplemental Briefing.** The parties shall file simultaneous supplemental

briefs by September 18, 2026, limited to 15 pages, with simultaneous responses by September 25, 2026, limited to 7 pages. The briefing shall address the following topics:

A. *Convention negotiation and drafting history.*

i. The parties shall examine the travaux préparatoires of the Montreal Convention, including the relevant ICAO diplomatic-conference materials, together with the United States ratification materials, including Senate Treaty Document 106-45 and Senate Executive Report 108-8.

ii. The parties shall also examine the relevant Warsaw Convention history to the extent it informs the meaning carried forward into Montreal.

iii. The briefing should not discuss the general history of either Convention. The focus should be on material bearing on the meaning of "passenger"; the treatment of crew members and airline employees; contracts or undertakings of carriage; gratuitous carriage; and persons transported by an airline in connection with their employment.

iv. In particular, the parties shall address whether anything in the Montreal Convention's negotiating or ratification history indicates an intention to preserve, modify, reject, or clarify the Warsaw-era treatment of airline employees or crew as passengers.

v. The parties shall also address the significance of the Montreal Convention's preservation of language previously construed under the Warsaw Convention and what that means for the continued force of cases such as *Mexico City*, *Sulewski*, and *Long Island*.

B. *Treaty texts.*

i. The parties shall compare the relevant authentic texts of the Warsaw and Montreal Conventions and advise whether any change in wording or linguistic difference bears on the meaning of "passenger," the undertaking of carriage, or the "contract of carriage" concept.

ii. If there is no meaningful difference, say so. If there is,

explain why it matters.

C. *Foreign authority.*

i. The parties shall identify and analyze decisions from courts of other State Parties addressing when a crew member, airline employee, positioning employee, observer, trainee, or other person aboard an aircraft is—or is not—a "passenger" under the Montreal Convention, the Warsaw Convention, or materially equivalent national implementations.

ii. The research should not be limited to cases using the word "deadhead." The relevant question is broader and asks where have courts drawn the boundary between a passenger and a person aboard an aircraft in connection with employment or other assigned duties.

iii. Authority from Canada, the United Kingdom, France, Australia, and other jurisdictions with developed aviation law may be of particular relevance. Parties must disclose foreign authority that cuts against their own position.

iv. If a decision is not in English, provide the decision and a reliable English translation of the pertinent portions.

v. The parties shall also address what weight American treaty law gives decisions from courts of fellow signatories, particularly in light of the Convention's objective of uniform interpretation.

D. *International commentary.*

i. The parties shall identify any leading aviation-law commentary or treatise discussion specifically addressing airline employees, crew members, deadheading or positioning personnel, or comparable persons as passengers under the Warsaw or Montreal regimes.

3. **Renewed Dispositive Motions.** After limited discovery is completed as described above, any motions for summary judgment on the issue of passenger status shall be filed by October 16, 2026. Responses shall be filed by October 30, 2026, and any

replies are due by November 6, 2026.

If there are cross-motions for summary judgment, the parties shall file with the opening motion papers a single joint statement of genuinely undisputed material facts, followed by separately identified disputed facts. The submissions shall not amount to two competing descriptions of facts that are actually undisputed.

The summary judgment briefing should integrate the developed factual record with the supplemental treaty research. The parties need not reproduce the September treaty briefs and may incorporate them by reference where appropriate.

Date: August 21, 2026

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge